## No. 18.

### PATRICK BOURKE *v.* E. WOOD PERRY *et al.*

1.  Where parties purchase from a common vendor, who has laid out in the rear an alley common to them all, but by their titles their lots run back only to such alley, they receive no right, except that of use to the land taken up thereby.
2.  A mutual agreement, whereby all the parties owning such lots discontinued the use of such alley, does not vest in the contractants the title to the ground itself, upon which such alley was laid out.
3.  The parties, however, to such an agreement, will not be heard complaining thereof, and demanding the reopening of the alley.
4.  Where, in such an agreement, a person appears as agent of the owners of one of the lots, and immediately thereafter the portion of said alley, to the rear of said lot, is taken into its inclosure, and sheds, forming a part of the premises, are built thereon, it will be presumed that such appearer was, in fact, an agent.
5.  Where the present plaintiff purchased this lot, and went into, and retained for years possession thereof, with its portion of the alley inclosed and built upon as stated, he is estopped from demanding the reopening of the alley.
6.  Parties will not be heard complaining of wrongs to which they have been themselves participators.

*Appeal from Fifth District Court. Cullom, Judge.*

*W. H. Rogers* and *Wynne Rogers* for plaintiff, appellant.

*Jas. H. Grover* and *John M. Bonner* for defendants.

John H. Kennard, Esq., member of the Bar, judge *ad hoc* in this case, vice Rogers, judge, recused, having been of counsel therein, concurred in the opinion and decree of the Court.

McGLOIN, J.—Plaintiff sues defendants to compel the reopening of what he claims is an alley in common to his property, and that belonging to them, unlawfully closed by them, and for damages. It seems that all of these lots originally belonged to one J. P. Kirwan, who laid out in their rear an alley, five feet wide, by means of which access could be had by the occupants of each lot to Gravier street. Kirwan becoming insolvent, this property was sold

by order of court to the parties engaged in this litigation, or their predecessors. In each of these acts, the lots disposed of are described as bounded upon the rear by this alley, the use of which is reserved to all of said lots or their owners. Sometime afterwards, and before the date of the act we are next about to mention, the City of New Orleans, for the purpose of opening up Claiborne street, appropriated a large portion of the front of each of these lots, leaving of the one claimed by plaintiff only a right-angled triangle, 26 feet, 8 inches, 7 lines, by 11 feet, 3 inches.

Upon the 15th day of April, 1861, the various defendants in this suit, or their predecessors, with one Andrew Parle, appearing to represent the lot now claimed by plaintiff, appeared before a notary, and agreed to discontinue the use of said strip in the rear as a common alley, and to add to each lot the portion of said alley which lay immediately to its rear.

It would seem to us that the right of these parties to do this was very questionable, because they had acquired from the insolvent estate of Kirwan no title to the soil of this alley; but, on the contrary, by the express terms of their titles, their ground was permitted to run back only to this alley, and no farther. All that they had contracted for, or received, was the right to use this strip of ground for purposes of having access from Gravier street to the rear of their properties.

What effect the abandonment of this right of use, resulting from the Act of April 15, 1861, has had upon the absolute ownership of this strip, it is not our province here to determine; but we are called upon to say, that in our opinion, its partition by these parties was, according to the showing of this record, entirely unwarranted.

If, however, Andrew Parle really represented the lot now claimed by plaintiff, either as owner or representative of the owner, in default of complaint upon the part of those who might be entitled to claim the ownership of the strip, we

would not be at liberty, as between these parties, to disturb the arrangement.

There are several questions raised in this case upon the admissibility of evidence and the legal effect thereof, the determination of which is, under the view adopted by this Court, unnecessary.

We do not consider the ownership of Parle as established, nor is there any direct proof of his agency in the premises. The evidence, however, establishes the fact that immediately after the passage of the Act of 15th April, 1861, all of said lots, including that claimed by plaintiff, were extended backwards, so as to inclose their proportions of this strip. This lasted up to the time of the filing of this suit, March 11, 1873, and was still the state of affairs when the witnesses testified upon the trial of the cause, January 16, 1874. For five years preceding this last date, a carpenter shop, constituting a part of the premises, within the plaintiff's inclosure, was actually resting upon a portion of this common alley.

Plaintiff's title, as offered, was executed March 28th, 1870, so, therefore, this carpenter shop was upon the premises then, and constituted part of his acquisition. So far as appears to the contrary, it is still remaining as an obstruction to the alley.

Besides so purchasing the property as extended, he had been at the time of trial, for years, and was then, himself in the enjoyment of all the advantages of the act of April 15th, 1861, as had been his predecessors, ever since the execution of that act, and he and they have been, with defendants, guilty of obstructing the free use of the alley.

We cannot listen to a person who complains of a wrong in the perpetration or continuance whereof he has participated; nor would it be proper, under any circumstances, to accord plaintiff any relief in the way of compelling defendants to clear away their obstructions in his interest, when he has not himself removed his own, and tendered to his neighbors that portion which he demands of them.

Farthermore, even were Parle originally without authority to represent, in the Act of April 15th, 1861, the owners of that lot, they were at liberty, by subsequent ratification, to adopt or confirm what he had done, in which event they would become bound as fully as though original authority had existed. Availing themselves of the terms of this convention, joining with their neighbors in the actual division of the strip, was a ratification of the strongest character, if, indeed, it does not, by presumption or as circumstantial evidence, go to prove original authorization. Bringing the same principle more immediately home to plaintiff, individually, his taking and long use of this shed, and of the ground in question, constitutes a personal ratification, even if he were not bound by that of his predecessors.

Judgment affirmed.